Good morning. Good morning, Your Honor. May it please the Court. Are you back? Yes, I am back, Your Honor. You still appear to be the same individual. I am still Renee Maness of the Federal Public Defender's Office here in Portland, Oregon. Today I am appearing on behalf of Mr. Kilunnun Chivoski. For two years, the Oregon Department of Health and Human Services Child Services Division sent Mr. Chivoski's daughters to therapy for the express purpose of having them acknowledge that they were the victims of sexual abuse and to identify their assailant. They also insisted on labeling them as victims of sexual abuse in all of their records before the Child Dependency Court, even though the children denied being victims of sexual abuse, the children's attorney in the dependency proceedings wanted that designation removed, and the court-appointed special advocate in the dependency proceedings wanted that designation removed. And the children's court, the judge overhearing the children's dependency proceedings, quite literally castigated DHS personnel in a way which is I have never seen in my almost 30 years of practicing law for labeling these children as victims of sexual abuse when they claimed no such sexual abuse had occurred and accusing Mr. Chivoski of sexually abusing his children. After two and a half years — So that judge appeared to reach a different conclusion than the jury did in this case. Correct. Correct. After two and a half years, Mr. Chivoski's children finally stated that they believed they had been sexually abused. It would have been very interesting to have the jury hear how DHS had been castigated by that judge for making these allegations and how DHS — So how would the judge's opinion have been relevant evidence? Because — So how would the judge's opinion have been relevant evidence? Under F.R.E. 803, it's a reported proceeding. It's directly relevant to whether or not these children are really recalling being sexually abused. Was the judge qualified as an expert? The judge was qualified to review the evidence presented before him. Well, that's not the question I asked. He's not a precipient witness, is he? What he was talking about was whether — Was he a precipient witness? No, he was not. So you're basically offering his opinion on the evidence that came before him. I'm not sure how that's evidence for the proceeding that we're looking at today. The judge's statements were not offered for the truth of the matter of whether or not the children were abused. Sure they were. That's the impact that you're hoping to have on the jury. We're trying to explain the story of how these children came to make these allegations and why DHS was so absolutely insistent on continuing to send these children to therapy to have them disclose that they were the victims of sexual abuse. Well, now, the victims testified at the jury trial, which is here on direct appeal, right? We're here on direct appeals. But we have these ongoing CPS or whatever dependency proceedings that go on where the children are taken away and then they're given back to him and he turns them over. He turns them back when he's homeless and all of that. But that being said, this is a direct criminal appeal. So in the direct criminal appeal, my understanding is that the jury convicted him of one of the daughter's allegations, did not convict him of, was it the younger daughter, I believe? Yes, Your Honor. And I'm sorry, I forgot. I'm going to attempt to reserve two minutes for rebuttal. All right. We'll see how that goes. The younger daughter's allegations were subjected to a Rule 29 directed verdict at the close of the prosecution's case. So those are not before us. So he did. Okay. So he's convicted on the one. And I think that there is some, there was some medical evidence that was introduced as to that daughter, right? Actually, the medical evidence is critical, because it establishes she was not abused. What happened... Well, it kind of was argued both ways there. No, absolutely not. The young girl is taken the day after she's removed from her father. She's taken... Okay. But you're kind of trajectory off on. The point is we're on direct appeal in this case. And you wanted to enter into evidence the judge's conclusion in a dependency hearing, right? Which is hearsay. Under 803, while hearsay, it is still admissible, because it establishes the reality of the situation with DHS and why they are so motivated to have these girls continue... Were the witnesses cross-examined as to that they didn't report over a period of time, and then they finally, the jury knew that they didn't initially report, right? Yes, Your Honor. And the jury knows that they were being counseled during a period of time, and it was that the jury knows the circumstances of how long it took them to report, right? Yes, Your Honor. They did know that fact. But the motivations of the State actors, although I would like briefly to return to the medical evidence, because I think it's critical that the court understands that originally DHS contended that the older girl was so badly abused she would need surgical repair. She was taken to a gynecological pediatric expert who said, you are crazy. There is nothing wrong with this young woman. She reports she was not the victim of sexual abuse and is a reliable witness. She has a completely normal vaginal development. There is absolutely no evidence of sexual abuse. And yet, that fact never makes it into the DHS proceedings. They continue to label her as a victim of sexual abuse with physical evidence. They intentionally ignore the report of the expert medical doctor saying that this is not true, and they persist for two years to try and get a child to disclose that she's been sexually abused. She has been the victim of sexual abuse perpetrated by her father. We think that in order for Mr. Schavosky to confront these allegations against him, it's absolutely critical for the jury to understand the entire realm of what happens with DHS and why, why would they persist in sending these girls. Who made the decision to prosecute this case? The U.S. Department of Justice. Not DHS. Actually, there was significant evidence that DHS was intertwined. The DHS caseworker for the girls called himself a member of the prosecution team. The DHS caseworker continued. But didn't make the decision. Continued. I understand that the level of animus between your client and DHS is very high. I don't understand how that's relevant to this proceeding, why the court had to get into that, why the court should delve into everything that might have happened in state court. Because it explains why these girls were continuously sent for two years. You had the opportunity and plainly did examine them as to how long it took and so forth. What's going on behind the curtain on the state side strikes me as it apparently struck the district judge as a real tangent that doesn't speak to what the jury is supposed to be considering. The jury is supposed to be considering the truth of the disclosure of these girls of E.S. at this point in time's allegation of sexual abuse. How she came to make that allegation is absolutely critical to an evaluation of that truth. Was there an opportunity to put on the gynecological examination evidence? Yes, Judge Fischer, we did put on the gynecological, the doctor, yes. So she testified in essence what you just recounted to us, that when she examined the vaginal allegation, there wasn't any sign of illicit or forced sexual relation? Yes, Dr. Lee was able to testify to that. Interestingly enough, both E.S. and her older brother testified that they still believed there was physical evidence of sexual abuse. Because they had been told that by the state of Oregon for two and a half years. I'd like to reserve the rest of my time for rebuttal. Good morning. Good morning, Your Honors. May it please the Court. Robison, Hombath, United States. Maybe you should just pick up where she's talking about in terms of, obviously that was direct appeal. You have these dependency. But it is crucial in terms of that these allegations were not immediately reported. And so what opportunities were presented in the criminal trial to establish why they weren't reported immediately, both from your perspective and the defense perspective? Sure, Your Honor. So I think what was presented at the criminal trial was actually significantly more information than Judge Van Dyke, the state custody judge, had before him when he seemingly misunderstood what the medical evidence showed. So the jury in this case heard the testimony of all three children. They heard the testimony of the one victim for whom they convicted. They heard the testimony of both the sexual assault nurse examiner who said that she found injuries, vaginal injuries, on that victim. They also heard the testimony of Dr. Lee, the doctor who over three months later testified. And what he said was that his examination, which took place three months later, didn't foreclose the possibility that the same examination had revealed injuries. It just foreclosed the possibility that there had been penetrative injuries sustained in the preceding two weeks. So what was missed in the state dependency hearings was that there was a three-month gap between the initial examination and Dr. Lee's examination. And so Dr. Lee, you know, explained to the jury why that would make sense that you may not find injuries after three months. It's also worth noting that the testimony of the victim in this case was not that she was penetrated by Mr. Chbosky. There was allegations that he sexually abused her, culminating, I think, most gratuitously in him performing oral sex on her. But it's not clear that he would have injured her in such a way that would have remained three months after her initial nurse examination. The jury also heard directly from two officials associated with DHS and heard from the girl's therapist. And all of these people, including the victim herself, were subject to cross-examination on the notion that she was talked into or coerced into making these allegations by DHS. So I think the district court made the correct ruling in recognizing that the jury could, and as Judge Clifton alluded to, did in fact reach a different conclusion based on the facts than the dependency court judge reached. I think in fairness to the dependency court judge, he had an extremely limited record. He didn't have the testimony of the doctors in front of him. I think that presenting his mistake or his conclusion to the jury would have been highly prejudicial to the United States. It would have subverted the fact-finding function of the jury. And as this Court has recognized in sign in subsequent cases, you know, putting judicial fact findings in front of a jury raises a real concern that they're going to give those findings undue deference. Here, the jury had far more information than Judge Van Dyke did in the dependency hearings. They were able to hear the witnesses who were vigorously cross-examined by Mr. Chvosky's counsel. And they reached their own conclusion as to the — Well, they did acquit as to the younger daughter, correct? Well, Your Honor, the jury didn't acquit, but Judge Hernandez, following the conclusion of the government's case — Well, the Rule 29, I guess. Rule 29. And I believe that was not — I think the record's fairly clear that it's not necessarily that he didn't believe that there was sexual abuse of that daughter. But as the case was charged under 2423A, one of the elements was that at the time that Mr. Chvosky transported these two girls into the state of Oregon, Mr. Chvosky had the motivating, controlling, or significant purpose of sexually abusing them. And so I think my recollection from the judge's reasoning from the bench was that the intent element, as opposed to the existence of abuse or non-existence of abuse, was what caused him concern with regards to that count. Could you address the question of why the information about his encouraging the girls to commit thefts was admissible? Yes, Your Honor. So what the court found — the case, factually, I think is somewhat unique. What the evidence showed was that over the course of an approximately 11-month period, Mr. Chvosky loaded his two daughters into a truck — into two cars, but ultimately a truck — and drove them from place to place around the country. During the course of that 11 months, Mr. Chvosky undertook significant efforts to isolate those girls and ensure they didn't have contact with adults to whom they could disclose abuse, didn't have contact with adults with whom they could build trust relationships, and that Mr. Chvosky took significant efforts to brainwash those children to not be trusting of adults, to not be willing to go to officials, to be scared of foster care. And so as part and parcel of Mr. Chvosky's efforts to isolate and brainwash those children, he enlisted them in small larcenies and petty crimes. Some of those specific crimes, including stealing schnapps from a vacation house that the victim testified Mr. Chvosky compelled the children to drink and then proceeded to attempt to abuse her. So what the Court found was that those actions were so inextricably intertwined with the crimes themselves that they gave the jury the sense as to what environment the children were living in, how Mr. Chvosky was isolating them and keeping them from the watchful eyes of DHS, CPS in other states, or any adult who could recognize the condition those children were in. So it told so much of the story in terms of what environment the children were living in, how they were kind of being brainwashed to not trust people and to engage with Mr. Chvosky in these kind of off-the-grid activities. It's noteworthy, I think, Your Honor, and it came up in the trial, that on the day the victim ultimately disclosed that Mr. Chvosky had abused her, this is after she's been taken from his care and placed in foster care, she did so at the same time of talking about these burglaries that they had committed. She felt a great deal of shame about her activities, and I think it was one of the things that had her keep her silence longer than perhaps it would have otherwise. So the district court certainly had an adequate record, I think a strong foundation, and did not abuse its discretion in finding that those activities were really part and parcel of the crime of transporting these children from place to place and ultimately into Oregon. I have a question. There's a pending motion regarding File Exhibit No. 5 under SEAL. Why is it necessary for us to review Exhibit No. 5 for resolving the issues on appeal? Your Honor, I'm sorry. I apologize. I'm not familiar with the Court's motion. I apologize that I missed it. Oh, wait a second. I think it is, well, I have on December 13, 2017, the government filed a motion under Ninth Circuit Rule 2714 to transmit an exhibit under SEAL. So if I'm correct, Your Honor, I think what that was was the forensic interview video of one of the minors. Yes, that's what it is. It's just a DVD. It was just, I think, to give the Court the ability to review that video since some of the factual statements made in the government's brief are based on that video, which was presented to the jury. Well, we don't really need to review it, do we? No, Your Honor. Because I think there might have been, I think there may have been opposition. Shavosky filed opposition arguing that it relates to charges for which Shavosky was acquitted and admitting would violate double jeopardy. But, I mean, if we don't really need to look at it, then we can make both of you happy by denying that. I think you're correct, Your Honor. I don't think the Court needs to reach that. All right. Unless the Court has additional questions, I will submit. We don't appear to. Thank you. All right. I'll give you two minutes. Thank you, Your Honor. A couple of issues. I believe that if you take a look at Dr. Lee's testimony, he does not limit his testimony as represented by Mr. Sinha. He specifically states that there's absolutely no evidence, and if she had been so badly damaged to need sexual repair, I'm sorry, surgical repair of the sexual abuse, which is what DHS contended, there would still have been evidence three months later. Addressing some of the other issues which are on appeal, Mr. Shavosky was not tried for being mentally ill, homeless and itinerant. The evidence showed he had been that way since he was 14 years old, sometimes in the company of his children, sometimes just by himself. All of the other alleged bad acts that were introduced by the government did not relate in any way to the sexual abuse of ES. It related to the fact that Mr. Shavosky and his children, all three, were itinerant and homeless. But it's sort of, it's really, you always have to give context when you tell a story. And let's say if you said that if you just limited to when the sexual act occurred in a car, well, if a person's homeless and they're living in the car, that is probably relevant to why it might not have happened somewhere else. But the whole point of this is these minors do not report this over a period of time. And you're cross-examining for reasons, well, if it's true, why don't you report it and all of that. It seems that it's important for a jury to understand exactly how these children were living during the period that it happened to evaluate why they might have reported, why they might not have reported, all of those things. It was sort of unusual, so if you completely didn't give some backdrop as to what, how they were all living, it just, none of the case would make any sense. And if the argument is only that they were isolated, the fact that they're itinerant and homeless and traveling establishes that they're isolated. The types of bad acts that were introduced were he let them on one occasion have some alcohol, he, they broke into homes to find food and things to sell. He had sex with consenting adult women at a point in time when he thought the children were asleep in the next hotel bed or in the back of the cab. These do not establish that he is itinerant and homeless. All they do is make a character assassination of Mr. Shavosky, which is based on the fact that he is itinerant and homeless, not on the fact that he is sexually abusing anyone. The government did not need these bad acts to prove that. I think there was also, wasn't there also evidence of, put on about grooming and how alcohol and isolation and all of those things can be grooming? Which is, you know, I know that's a whole other thing, but we're into a whole other minute beyond. But I think you briefed all of those things. And we'll just submit on the briefs on the fact that grooming by a parent has been the subject of absolutely no I understand. You made a dauber challenge to this, Your Honor.
judges: Fisher, Clifton, Callahan